## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHERINE BUI, RITA LE, YOUNGSHIN AN, and SHANIDA YOUNVANICH individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>ABLE C&C US, INC.,<br><br>*Defendant.* | Case No.<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Katherine Bui, Rita Le, Youngshin An, and Shanida Younvanich ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against Able C&C US, Inc. ("Defendant"), and upon personal knowledge as to Plaintiffs' own acts and experiences, and on information and belief as to all other matters, including based on an investigation conducted by counsel, complain and alleges as follows:

### NATURE OF THE ACTION

1.     This case relates to Defendant's labeling and marketing of its sunscreen products as "waterproof" (and similar claims) when they are, in fact, not.

2.     Consumers are increasingly aware of the risks associated with sun exposure and its effect on skin.

3.     Consumers often wear sunscreen in and around water and are attracted to sunscreens that can protect against the sun's harmful ultraviolet ("UV") rays in those types of environments.

4.      Unfortunately, all sunscreens eventually wash off in the water, and thus there is no such thing as "waterproof" sunscreen. For that reason, any claim that a sunscreen is "waterproof" is false and misleading.

5.      For example, according to the U.S. Food and Drug Administration ("FDA"):[1]



6.      Similarly, no sunscreen blocks the sun's UV rays entirely, and wearing even the strongest sunscreen in the sun always results in some UV exposure. For that reason, any claim that a sunscreen provides "impenetrable UV protection" or "blocks all UV rays" is false and misleading.

7.      In fact, claims that a sunscreen is "waterproof," "sweatproof" or "sunblock" are expressly prohibited under U.S. regulations because they are *per se* false and misleading. 21 C.F.R. § 201.327(g) ("*False and misleading claims.* There are claims that would be false and/or misleading on sunscreen products. These claims include but are not limited to the following: 'Sunblock,' 'sweatproof,' and 'waterproof.' These or similar claims will cause the product to be misbranded under section 502 of the FD&C Act")

8.      Defendant sells several types of sunscreens online and in retail stores, including MISSHA All Around Safe Block Waterproof Sun Milk ("MISSHA Waterproof Sun Milk"),

---

[1] https://www.fda.gov/news-events/rumor-control/facts-about-sunscreen (last visited on January 31, 2024)

A'PIEU Pure Block Waterproof Sun Cream ("A'PIEU Waterproof Sun Cream"), MISSHA All Around Safe Block Essence Sun Milk ("MISSHA Essence Sun Milk"), and MISSHA All Around Safe Block Soft Finish Sun Milk ("MISSHA Soft Finish Sun Milk") (collectively, the "Products").

9.     Intending to profit from consumers' desire to protect their skin from the sun's harmful rays, including while in and around water, Defendant falsely and misleadingly tells consumers that the Products are "waterproof," "sweatproof," and block "all UV rays … despite contact with water and sweat."

10.     For example, two of the Products—MISSHA Waterproof Sun Milk and A'PIEU Waterproof Sun Cream—are falsely and misleadingly labeled as "waterproof," including as follows:



11.     And two of the Products—MISSHA Essence Sun Milk and MISSHA Soft Finish Sun Milk—are falsely and misleadingly marketed as waterproof sunblock, including that they provide "impenetrable UV protection" that "blocks" all UV rays "despite contact with water and sweat," including as follows:

3

## Double Layer UV Blocking System Holds Up Strong to Water and Sweat

New Double Layer UV Blocking System provides long-lasting and impenetrable UV protection, even as the humidity rises




12.     None of the Products are waterproof or sweatproof.

13.     None of the Products blocks all UV rays despite contact with water and sweat.

14.     Defendant's labeling and marketing is, therefore, false, deceptive, misleading, and unfair.

15.     Plaintiffs bring this action, individually and on behalf of all others similarly situated (the "Classes," as defined below), for damages and injunctive relief.

### JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) of the Class Action Fairness Act because: (1) there are 100 or more putative class members; (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states.

17.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because Defendant is headquartered in this District and because Defendant is subject to the personal jurisdiction of this Court.

## PARTIES

18.     Plaintiff Katherine Bui is a citizen of California. As described more fully below, Ms. Bui was exposed to and relied upon Defendant's false and deceptive claims and purchased MISSHA Waterproof Sun Milk during the relevant time period.

19.     Plaintiff Rita Le is a citizen of California. As described more fully below, Ms. Le was exposed to and relied upon Defendant's false and deceptive claims and purchased MISSHA Waterproof Sun Milk, A'PIEU Pure Block Waterproof Sun Cream, and MIISSHA Essence Sun Milk during the relevant time period.

20.     Plaintiff Youngshin An is a citizen of New York. As described more fully below, Ms. An was exposed to and relied upon Defendant's false and deceptive claims and purchased MISSHA Waterproof Sun Milk during the relevant time period.

21.     Plaintiff Shanida Younvanich is a citizen of Illinois. As described more fully below, Ms. Younvanich was exposed to and relied upon Defendant's false and deceptive claims and purchased MISSHA Waterproof Sun Milk during the relevant time period.

22.     Defendant Able C&C US, Inc. is a Delaware corporation with its principal place of business in Englewood, New Jersey.  Defendant sells sunscreen products under the MISSHA and A'PIEU brands, including the Products, and falsely labels and markets the Products as described herein.

## FACTUAL ALLEGATIONS

### A.    SUN EXPOSURE IS DANGEROUS TO HUMANS

23.    Sunlight travels to Earth as a mixture of both visible and invisible rays or waves. One such ray or wave is ultraviolet ("UV") light.

24.    Exposure to UV rays damages human skin cells.

25.    Exposure to UV rays contributes to premature aging.

26.    Exposure to UV rays contributes to the development of melanoma, a dangerous type of skin cancer, and can also alter a gene that suppresses tumors, raising the risk of sun-damaged skin cells developing into skin cancer.

27.    The body cannot repair all of the damage done by UV exposure.

28.    Damage from UV exposure is cumulative and builds up over a person's lifetime.

### B.    SUNSCREEN AND ITS LIMITATIONS

29.    Sunscreen is a photoprotective topical product for the skin that helps to protect users from harmful UV rays.

30.    Sunscreen decreases the amount of UV a user is exposed to and thus decreases the amount of damage caused to the user's skin cells.

31.    All sunscreen, however, have certain limitations, including that no sunscreen is waterproof, no sunscreen is sweatproof, no sunscreen blocks all UV ray exposure, and no sunscreen provides "all-day" protection.

32.    According to the U.S. Food and Drug Administration, "[t]here's no such thing as waterproof sunscreen," and "[n]o sunscreen is waterproof":[2]

---

[2] https://www.fda.gov/news-events/rumor-control/facts-about-sunscreen (last visited on November 2, 2023)

6



> **Fact: There's no such thing as waterproof sunscreen.**
>
> **More Information:** All sunscreens, even those labeled "water resistant," eventually wash off. Water resistance claims, for 40 or 80 minutes, tell you how much time you can expect to get the labeled SPF-level of protection while moving in and out of the water Manufacturers may not make claims that their sunscreens are "waterproof" or "sweatproof."
>
> **Bottom Line:** No sunscreen is waterproof.

33.    Claims that a sunscreen is "waterproof," "sweatproof" or "sunblock" are expressly prohibited on sunscreen products by U.S. regulations because they are *per se* false and misleading. 21 C.F.R. § 201.327(g) ("*False and misleading claims*. There are claims that would be false and/or misleading on sunscreen products. These claims include but are not limited to the following: 'Sunblock,' 'sweatproof,' and 'waterproof.' These or similar claims will cause the product to be misbranded under section 502 of the FD&C Act.").

**C.    DEFENDANT'S FALSE AND MISLEADING LABELING AND MARKETING**

34.    The market for sun protection products has an overall valuation of many billions of dollars.

35.    Defendant sells several types of sunscreens—including MISSHA Waterproof Sun Milk, A'PIEU Waterproof Sun Cream, MISSHA Essence Sun Milk, MISSHA Soft Finish Sun Milk—online and in retail stores.

36.    In order to compete in a growing market of sunscreen products and sellers, Defendant makes numerous false, deceptive, misleading and/or unfair statements regarding its Products.

**1.    MISSHA All Around Safe Block Waterproof Sun Milk**

37.    MISSHA Waterproof Sun Milk is labeled as "waterproof," including as follows:



38.    Defendant also markets MISSHA Waterproof Sun Milk as "waterproof" and "water/sweat/sebum proof."

39.    For example, Defendant markets MISSHA Waterproof Sun Milk as "waterproof" at the point of sale on its website, including as follows:



40.    Defendant's website also claims that MISSHA Waterproof Sun Milk provides "all-day protection" that "[d]oesn't wash or rub off on contact with water," including as follows:



41.    Defendant also sells MISSHA Waterproof Sun Milk on retail websites, including Walmart.com and Amazon.com.

42.    On Walmart.com, Defendant markets MISSHA Waterproof Sun Milk as a "Sweat, Water, Sebum Proof" sunscreen that "Doesn't rub off on contact with water," including as follows:

> BENEFITS:
> Sweat, Water, Sebum Proof: Doesn't rub off on contact with water, provides long-lasting sun protection, and is suitable for all types of outdoor activities.
> Eucalyptus Extract for Oil Control: Eucalyptus extract helps to control oil production, keeping the skin feeling soft and refreshed.
> Keeps Skin Refreshed in 3 Ways: Lightweight, non-sticky, non-greasy formula allows for comfortable wear even for extended periods of time.

43.    On Amazon.com, Defendant markets MISSHA Waterproof Sun Milk as a "Waterproof," "Water & Sweat proof," and "Sweat, Water, Sebum Proof" sunscreen that "Doesn't rub off on contact with water," including as follows:





44.     MISSHA Waterproof Sun Milk is not "waterproof."

45.     MISSHA Waterproof Sun Milk is not "sweatproof."

46.     MISSHA Waterproof Sun Milk does not provide "all-day protection" that "[d]oesn't wash or rub off on contact with water."

47.     The claims identified in Paragraphs 37 through 43 are false, deceptive, misleading, and unfair.

**2.     A'PIEU Pure Block Waterproof Sun Cream**

48.     A'PIEU Waterproof Sun Cream is labeled as "waterproof," including as follows:



49.    Defendant's website describes A'PIEU Waterproof Sun Cream as "waterproof."

50.    Defendant also sells A'PIEU Waterproof Sun Cream on retail websites, including Walmart.com and Amazon.com.

51.    Defendant's Walmart.com page claimed that A'PIEU Waterproof Sun Cream is "WATERPROOF," and "WATER-PROOF / SWEAT-PROOF / SEBUM-PROOF," including as follows:



52.    Defendant's Amazon.com page claimed that A'PIEU Waterproof Sun Cream is "WATERPROOF," including as follows:



53.    A'PIEU Pure Block Waterproof Sun Cream is not "waterproof."

54.    A'PIEU Pure Block Waterproof Sun Cream is not "sweatproof."

55.    The claims identified in Paragraphs 48 through 52 are false, deceptive, misleading, and unfair.

**3.    MISSHA Essence Sun Milk and MISSHA Soft Finish Sun Milk**

56.    In addition to MISSHA Waterproof Sun Milk, Defendant also sells MISSHA Essence Sun Milk and MISSHA Soft Finish Sun Milk under the "MISSHA All Around Safe Block" brand.



57. Defendant's website claims that MISSHA Essence Sun Milk and MISSHA Soft Finish Sun Milk provide "impenetrable UV protection" that blocks "all UV rays," and that "despite contact with water and sweat, [the] UV barrier stays put," including as follows:



58. MISSHA Essence Sun Milk and MISSHA Soft Finish Sun Milk were marketed on Walmart.com using the claims and images described in Paragraph 57.

59. MISSHA Essence Sun Milk and MISSHA Soft Finish Sun Milk were marketed on Amazon.com as providing "long-lasting and impenetrable UV protection" that "holds up to water and sweat."

60. The UV protection provided by MISSHA Essence Sun Milk and MISSHA Soft Sun does not "stay put … despite contact with water and sweat."

61. Neither MISSHA Essence Sun Milk nor MISSHA Soft Sun Milk provides "impenetrable UV protection" that blocks "all UV rays."

62.    The claims identified in Paragraphs 57 through 59 are false, deceptive, misleading and unfair.

**D.    DEFENDANT'S FALSE AND MISLEADING LABELING AND MARKETING INJURED CONSUMERS**

63.    Consumers are increasingly aware of the risks associated with sun exposure and its effect on skin.

64.    Consumers often wear sunscreen in and around water and are attracted to sunscreens that can protect against the sun's harmful UV rays in those types of environments.

65.    A reasonable consumer would interpret Defendant's "waterproof" claims— including that the Products are "waterproof," "sweatproof," and/or provide a UV barrier that "stays put … despite contact with water and sweat"—to mean that the Products are, in fact, waterproof and will not rinse off upon contact with water.

66.    The Products, however, are not waterproof and will rinse off in the water.

67.    A reasonable consumer would interpret Defendant's "sunblock" claims—including that the Products provide "impenetrable UV protection" and "all UV rays are blocked"—to mean that the Products block all UV ray exposure.

68.    The Products, however, do not block all UV ray exposure.

69.    The above-referenced claims were material to reasonable consumers, who are concerned about the dangers of UV exposure and often seek out sunscreen products precisely for the purpose of wearing them outdoors while sweating or in and around water.

70.    The above-referenced claims were false, deceptive, misleading and unfair because the Products are not waterproof and do not block all UV ray exposure.

71.    Upon information and belief, Defendant was able to increase its sales of Products and retain more profits by falsely labeling and marketing the Products as described herein.

72.    Upon information and belief, Defendant falsely labeled and marketed the Products as described herein to further its private interests of: (a) increasing sales of the Products while decreasing competitors' sales of sunscreens that are not unlawfully labeled and marketed; and/or (b) commanding a higher price for the Products because consumers will pay more for (i) "waterproof" sunscreen than sunscreen that will wash off in the water, and (ii) sunscreen that provides "impenetrable UV protection" and "blocks" all UV rays than sunscreen that is incapable of blocking all harmful UV exposure.

73.    Upon information and belief, Defendant's false labeling and marketing described herein allowed it to charge a price premium for the Products.

**E.    PLAINTIFFS' COUNSEL SERVED DEFENDANT WITH SUFFICIENT PRE-SUIT NOTICE**

74.    Plaintiffs' counsel, on behalf of Plaintiffs, served Defendant with notice of their violations of applicable consumer-protection and warranty laws related to the Sunscreen Products and demanded that Defendant correct or agree to correct the actions described therein. Defendant received such notice no later than January 22, 2024.

**F.    PLAINTIFFS' EXPERIENCES**

75.    Ms. Bui is a resident of San Diego, California. In May 2023, Ms. Bui purchased a bottle of MISSHA All Around Safe Block Waterproof Sun Milk. Based on Defendant's advertising and labeling, Ms. Bui believed that the Product was "waterproof." At the time of her purchase, Ms. Bui did not know that the Product was not, in fact, "waterproof." Had Ms. Bui known that the Product was not, in fact, "waterproof," she would have paid less for the Product, or not purchased it at all. Ms. Bui purchased the Product because of Defendant's "waterproof" advertising and labeling, and, as a result, did not receive the benefit of the bargain and/or paid more for the Product than she would have paid but for Defendant's misrepresentation. Ms. Bui wore the MISSHA

Waterproof Sun Milk, including in the water. Because the Product is not "waterproof," and instead wash off in the water, Ms. Bui was, on information and belief, exposed to more harmful UV rays than she would have been had the Product in fact been "waterproof." Ms. Bui regularly shops for skincare products and would likely purchase Defendant's Products in the future if they were marketed without the false and/or misleading "waterproof" claims. For example, if Defendant changed its marketing to accurately express how long Defendant's Products stay active in damp environments, or are "water-resistant", Defendant might have to lower the price, and Ms. Bui might be willing to pay that lower price. Ms. Bui will otherwise be unable to rely on the label when shopping for Defendants' Products in the future.

76.    Ms. Le is a resident of Pittsburg, California. In September 2023, Ms. Le purchased a bottle of MISSHA All Around Safe Block Essence Sun Milk and a bottle of A'PIEU Pure Block Waterproof Sun Cream. In November 2023, Ms. Le purchased a bottle of MISSHA All Around Safe Block Waterproof Sun Milk. Based on Defendant's advertising and labeling, Ms. Le believed that the Products were waterproof. At the time of her purchases, Ms. Le did not know that the Products were not, in fact, waterproof. Had Ms. Le known that the Products were not, in fact, waterproof, she would have paid less for the Products, or not purchased them at all. Ms. Le purchased the Products because of Defendant's waterproof advertising and labeling, and, as a result, did not receive the benefit of the bargain and/or paid more for the Products than she would have paid but for Defendant's misrepresentations. Ms. Le wore the Products, including in the water. Because the Products are not waterproof, and instead wash off in the water, Ms. Le was, on information and belief, exposed to more harmful UV rays than she would have been had the Products in fact been waterproof. Ms. Le regularly shops for skincare Products and would likely purchase Defendant's Products in the future if they were marketed without the false and/or

misleading waterproof claims. For example, if Defendant changed its marketing to accurately express how long Defendant's Products stay active in damp environments, or are "water-resistant", Defendant might have to lower the price, and Ms. Le might be willing to pay that lower price. Ms. Le will otherwise be unable to rely on the label when shopping for Defendants' Products in the future.

77.     Ms. An is a resident of New York. In October 2022, Ms. An purchased a 70ml bottle of MISSHA Waterproof Sun Milk. Based on Defendant's advertising and labeling, Ms. An believed that the Product was waterproof. At the time of her purchase, Ms. An did not know that the Product was not, in fact, waterproof. Had Ms. An known that the Product was not, in fact, waterproof, she would have paid less for the product, or not purchased it all. Ms. An purchased the Product because of Defendant's waterproof labeling and marketing, and, as a result, did not receive the benefit of the bargain and/or paid more for the products than she would have paid but for Defendant's misrepresentations. Ms. An wore the Product, including in the water. Because the Product is not "waterproof," and instead washes off in the water, Ms. An was, on information and belief, exposed to more harmful UV rays than she would have been had the products in fact been waterproof. Ms. An regularly shops for skincare products and would likely purchase Defendant's products in the future if they were marketed without the false and/or misleading waterproof claims. For example, if Defendant changed its marketing to accurately express how long Defendant's Products stay active in damp environments, or are "water-resistant", Defendant might have to lower the price, and Ms. An might be willing to pay that lower price. Ms. An will otherwise be unable to rely on the label when shopping for Defendants' Products in the future.

78.     Ms. Younvanich is a resident of Chicago, Illinois. In May 2022, Ms. Younvanich purchased a 70ml bottle of MISSHA Waterproof Sun Milk. Based on Defendant's advertising and

labeling, Ms. Younvanich believed that the Product was waterproof. At the time of her purchase, Ms. Younvanich did not know that the Product was not, in fact, waterproof. Had Ms. Younvanich known that the Product was not, in fact, waterproof, she would have paid less for the product, or not purchased it all. Ms. Younvanich purchased the Product because of Defendant's waterproof labeling and marketing, and, as a result, did not receive the benefit of the bargain and/or paid more for the products than she would have paid but for Defendant's misrepresentations. Ms. Younvanich wore the Product, including in the water. Because the Product is not "waterproof," and instead washes off in the water, Ms. Younvanich was, on information and belief, exposed to more harmful UV rays than she would have been had the products in fact been waterproof. Ms. Younvanich regularly shops for skincare products and would likely purchase Defendant's products in the future if they were marketed without the false and/or misleading waterproof claims. For example, if Defendant changed its marketing to accurately express how long Defendant's Products stay active in damp environments, or are "water-resistant", Defendant might have to lower the price, and Ms. Younvanich might be willing to pay that lower price. Ms. Younvanich will otherwise be unable to rely on the label when shopping for Defendants' Products in the future.

## CLASS ALLEGATIONS

79.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs brings this action individually and on behalf of four proposed classes (collectively, the "Classes") defined as follows:

**Nationwide Class**: all persons in the United States who, within the applicable statute of limitations period, purchased one or more of the Products.

**California Subclass**: all persons in California who, within the applicable statute of limitations period, purchased one or more of the Products.

**New York Subclass**: all persons in New York who, within the applicable statute of limitations period, purchased one or more of the Products.

**Illinois Subclass**: all persons in Illinois who, within the applicable statute of limitations period, purchased one or more of the Products.

Specifically excluded from the Classes are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiffs reserve the right to modify, change, or expand the definition of any Class or Classes based upon discovery and further investigation.

80.    The claims of all Class members derive directly from the same false and misleading statements and omissions. This case is about the responsibility of a Defendant for its Products, and the affirmative misrepresentations and concealment/omissions Defendant made with respect to its Products. Defendant engaged in uniform and standardized conduct toward the Classes, and did not differentiate, in degree of care or candor, in the content of its statements and omissions among individual Class members. The objective facts are the same for all Class members. Within each cause of action asserted by the respective Classes, the same legal standards govern, including because, with respect to the Nationwide Class, the New Jersey consumer protection statute can apply to purchasers in all states, and with respect to Plaintiffs' warranty and unjust enrichment, many states share the same legal standards and elements of proof, facilitating the certification of a nationwide or multi-state class for those claims.

81.    This class action is brought pursuant to Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to all the members of the Classes, thereby making final injunctive relief or declaratory relief concerning the Classes appropriate.

82.    This class action is also brought pursuant to Rule 23(b)(3) because the questions of law or fact common to the claims of Plaintiff and members of the Classes predominate over any question of law or fact affecting only individual class members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

83.    **Numerosity**. Class members are so numerous and geographically dispersed that joinder of all Class members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are tens of thousands of putative Class members. Moreover, the number of members of the Classes may be ascertained from Defendant's books and records. Individual joinder of all Class members is impracticable. The number of Class members is sufficiently numerous to make class action status the most practical method for Plaintiffs to secure redress for injuries sustained and to obtain class wide abatement relief.

84.    **Common Questions of Law and Fact Predominate**. Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

    a.   whether the Products are "waterproof" or "sweatproof";

    b.   whether the Products block "all UV rays … despite contact with water and sweat";

    c.   whether the Products provide "impenetrable UV protection";

    d.   whether Defendant's labeling and marketing contained false, deceptive, misleading and/or unfair statements;

    e.   whether the labeling and marketing described herein was material to a reasonable consumer;

f. whether Defendant charged a price premium for the Products;

g. whether Defendant's conduct violated the warranty and consumer protection laws identified in the Counts below;

h. whether Plaintiffs received the benefit of the bargain from Defendant;

i. whether Plaintiffs overpaid for the Products;

j. whether sunscreen products that are misbranded under section 502 of the Federal Food, Drug & Cosmetics Act are worthless; and

k. whether Defendant was unjustly enriched.

85. **Typicality.** Plaintiffs' claims are typical of those of the absent Class members in that Plaintiffs and the Class members each purchased the Products and each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiffs share the aforementioned facts and legal claims or questions with putative members of the Classes. Plaintiffs and all members of the putative Classes have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiff and all members of the putative Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's actions, and misrepresentations and omissions regarding the Products. The damages of each member of the Classes were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

86. **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the Classes. By prevailing on their own claims, Plaintiffs will establish Defendant's liability to all Class members. Plaintiffs' counsel are unaware of any conflicts of interest between Plaintiffs as class representatives and absent Class members with respect to the matters at issue in this litigation. Plaintiffs will vigorously prosecute the suit on behalf of the Classes. Plaintiffs have retained

counsel with substantial experience in handling complex commercial and class action litigation. Plaintiffs and their counsel are committed to the vigorous prosecution of this action.

87. **Insufficiency of Separate Actions.** Absent a class action, Plaintiffs and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

88. **Superiority.** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons: (a) the damages suffered by each individual member of the putative Classes do not justify the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct; (b) even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed; (c) the claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes; (d) individual joinder of all members of the Classes is impracticable; (e) absent a class action, Plaintiffs and members of the putative Classes will continue to suffer harm as a result of Defendant's unlawful conduct; and (f) this action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Classes can seek redress for the harm caused by Defendant.

89. Plaintiffs and the Classes expressly disclaim any recovery in this action for physical injury resulting from their use of the Products without waiving or dismissing such claims, although

injuries suffered as a result of the Products washing off in the water may constitute evidence supporting various claims asserted herein.

90.     Plaintiffs reserve the right to seek certification of Rule 23(c)(4) of common questions related to Defendant's knowledge, conduct, and duties.

## CAUSES OF ACTION

### COUNT 1
### Violation of the New Jersey Consumer Fraud Act
### (On behalf of Plaintiffs and the Nationwide Class)

91.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

92.     Defendant, Plaintiffs, and Nationwide Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

93.     Defendant's Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

94.     In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its labeling and marketing of the Products, including by affirmatively stating that the Products were "waterproof" or "sweatproof" (and similar claims described above), and omitting, concealing and failing to disclose that the Products are not waterproof and eventually wash off in the water.  N.J. Stat. Ann. §56:8-1, *et seq.*

95.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the Products, as detailed above, Defendant engaged

in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

96.    Defendant's misrepresentations and omissions regarding the Products were disseminated to Plaintiffs and Nationwide Class members in a uniform manner.

97.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Nationwide Class members, about the nature, quality, value, and characteristics of the Products.

98.    The facts regarding the Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Nationwide Class members, who consider such facts to be important to their purchase decisions with respect to the Products.

99.    Plaintiffs and the Nationwide Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

100.    Specifically, Plaintiffs and the Nationwide Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding the Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Nationwide Class members would not have purchased the Products or, at

a minimum, would have paid less for them. Plaintiffs and the Nationwide Class members did not receive the benefit of their bargain and/or suffered out-of-pocket loss.

101.    Defendant's violations present a continuing risk to Plaintiffs and the Nationwide Class members, as well as to the general public.

102.    Defendant's unlawful acts and practices complained of herein affect the public interest.

103.    As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Nationwide Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

**COUNT 2**
**Breach of Express Warranty**
**(On behalf of Plaintiffs and the Nationwide Class or, in the alternative, the California, New York and Illinois Subclasses)**

104.    Plaintiffs incorporate by reference and re-allege each of the preceding paragraphs, as though fully set forth herein.

105.    In connection with the sale of the Products, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Products were "waterproof" and "sweatproof" (and similar claims).

106.    Defendant breached those express warranties by selling Products that were not waterproof.

107.    As a direct and proximate cause of Defendant's breach of these express warranties, Plaintiffs and the Nationwide Class members (or, in the alternative, members of the California, New York and Illinois subclasses) have been injured and harmed because they would not have

purchased the sunscreen Product on the same terms—or at all—if they knew that the sunscreen Products were not waterproof.

108.    Prior to the filing of this Complaint, Defendant was served with a notice letter. Plaintiffs' counsel sent Defendant a letter advising them that they breached an express warranty and demanded that they, among other things, cease and desist from such breaches and make full restitution by refunding the monies received therefrom.

**COUNT 3**
**Unjust Enrichment**
**(On behalf of Plaintiffs and the Nationwide Class or, in the alternative, the California, New York and Illinois Subclasses)**

109.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

110.    When they purchased the sunscreen products, Plaintiffs and members of the Nationwide Class (or, in the alternative, members of the California, New York and Illinois Subclasses) conferred tangible and material economic benefits upon the Defendant, who readily accepted and retained these benefits.

111.    Plaintiffs and the class members would not have purchased Defendant's Products, or would have paid less for them, had they known about Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding the Products, as described herein. Therefore, Defendant profited from the sale of the Products to the detriment and expense of Plaintiffs and the class members.

112.    The Defendant appreciated these economic benefits. These benefits were the expected result of the Defendant acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware that their Products were not waterproof (and

similar claims), yet they misled the Plaintiffs and the class members regarding the nature and quality of the Products while profiting from this deception.

113.    It would be unjust, inequitable, and unconscionable for the Defendant to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

114.    Plaintiffs and the class members are entitled to restitution of the benefits the Defendant unjustly retained and/or any amounts necessary to return Plaintiffs and the class members to the position they occupied prior to dealing with the Defendant, with such amounts to be determined at trial.

115.    Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Defendant, Plaintiffs will have no adequate legal remedy.

**COUNT 4**
**Violations of the California Consumers Legal Remedies Act**
**Cal. Civ. Code §§1750, *et seq.***
**(On Behalf of Plaintiffs Bui and Le and the California Subclass)**

116.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

117.    This cause of action is brought by Plaintiffs Bui and Le (for purposes of this Count, "Plaintiffs"), individually and on behalf of the California Subclass, pursuant to the California Consumer Legal Remedies Act ("CLRA").

118.    The CLRA prohibits deceptive practices concerning the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

119.    Defendant is a "person" under Cal. Civ. Code §1761(c).

27

120.    Plaintiffs are "consumers" under Cal. Civ. Code §1761(d), including because they purchased Defendant's Products primarily for personal, family or household use.

121.    The purchases of Defendant's Products by Plaintiffs and members of the California Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

122.    Defendant's Products are "goods" under Cal. Civ. Code § 1761(a).

123.    Defendant, directly and through its agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the nature, quality, value, and characteristics of the Products, as detailed above.

124.    Defendant's violations of the CLRA occurred repeatedly in its trade or practice—including the design, manufacture, distribution, marketing, and/or sale of the Products.

125.    By misrepresenting the Products as "waterproof" and "sweatproof" (and similar claims), and/or by failing to disclose and actively concealing that the Products were not in fact waterproof, Defendant engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a): (a) representing that the Products had a characteristic that they did not actually have; (b) representing that the Products were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard; (c) concealing and failing to disclose that the Products were not waterproof and therefore not suitable for their intended use despite advertising them as waterproof and suitable for their intended function; and (d) failing to market, distribute, and sell the Products in accordance with Defendant's previous representations—i.e., that the Products were "waterproof," "sweatproof" and similar representations. Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

126.    Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Products were "waterproof" or "sweatproof" (and similar claims). Defendant's misrepresentations, concealments, omissions, and suppressions of material facts did, in fact, deceive reasonable consumers, including Plaintiffs and the other members of the California Subclass, about the true nature, quality, value, and characteristics of the Products.

127.    Defendant intended for Plaintiffs and members of the California Subclass to rely on their misrepresentations, omissions, and concealment – which they did by purchasing the Products at the prices they paid believing that the Products were waterproof.

128.    Defendant's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Products were material to the decisions of Plaintiffs and members of the California Subclass to purchase the Products, as Defendant intended. Plaintiffs and the other members of the California Subclass were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and reasonably relied on Defendant's misrepresentations that the Products were "waterproof" and "sweatproof" (and similar claims) in deciding to purchase the Products. A reasonable consumer would have considered them important in deciding whether to purchase Defendant's Products or pay a lesser price. Had they known the truth about the Products, Plaintiffs members of the California Subclass would not have purchased the Products, or would have paid less for them.

129.    Defendant profited from selling the falsely, deceptively, and unlawfully advertised Products to unwary purchasers.

130.    As a direct and proximate result of Defendant's deceptive practices, Plaintiffs and members of the California Subclass have sustained economic injury and loss – either by purchasing Products they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendant's actions and omissions alleged above – that first occurred at the time each Product was purchased.

131.    Defendant's violations present a continuing risk to Plaintiffs and members of the California Subclass, as well as to the general public, because Defendant continues to falsely label, market and sell the Products as "waterproof."  Defendant's violations present a continuing risk to Plaintiffs and members of the California Subclass, as well as to the general public, because the Products do not perform as labeled and marketed, and use of the Products as labeled and marketed results in increased exposure to harmful UV rays. Defendant's unlawful acts and practices complained of herein affect the public interest.

132.    Plaintiffs and members of the California Subclass timely provided Defendant notice of the issues raised in this count and this Complaint and an opportunity to cure. At least thirty days prior to filing this Complaint, Plaintiffs sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

133.    Alternatively, Plaintiffs and members of the California Subclass were excused from providing Defendant with notice and an opportunity to cure the breach, because it would have been futile. It has been unlawful in the United States to make claims that sunscreen products are "waterproof" or "sweatproof" for over a decade, and Defendant continues to sell Products marketed in that way to this day.

134.    Pursuant to Cal. Civ. Code §1780(a), Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiff seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

### COUNT 5
### Violation Of The California False Advertising Law
### Business and Professions Code § 17500, *et seq.*
### (On Behalf of Plaintiffs Bui and Le and the California Subclass)

135.    Plaintiffs re-allege and incorporate the allegations contained in the above paragraphs.

136.    This cause of action is brought by Plaintiffs Bui and Le (for purposes of this Count, "Plaintiffs"), individually and on behalf of the California Subclass, pursuant to the California False Advertising Law ("FAL").

137.    Plaintiffs, members of the California Subclass, and Defendant are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

138.    The California FAL states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state . . . in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

139.    Defendant, directly and through its agents, employees, and/or subsidiaries, violated the FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the nature, quality, value, and characteristics of the Products, as detailed above. Defendant's actionable conduct includes misrepresentations, omissions, concealment, and failure to disclose that the Products were not, in fact, "waterproof" (and similar claims), as they were labeled and/or marketed.

140.    By misrepresenting the Products as "waterproof" and "sweatproof" (and similar claims), and/or by failing to disclose and actively concealing that the Products were not waterproof and would eventually wash off in the water, Defendant engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code § 17500.

141.    Defendant made or caused to be made and disseminated before the public in California, advertising, marketing, labeling, and other publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known, to be untrue and misleading to consumers, including Plaintiffs and the other members of the California Subclass.

142. Defendant's unfair or deceptive acts and practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Products were "waterproof" and "sweatproof" (and similar claims). Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and members of the California Subclass, about the true nature, quality, value, and characteristics of the Products.

143. Defendant intended for Plaintiffs and other members of the California Subclass to rely on their misrepresentations, omissions, and concealment—which they did by purchasing the Products at the prices they paid believing that the Products were waterproof.

144. Defendant's misrepresentations, concealments, omissions, and suppressions of material facts regarding the nature, quality, value, and characteristics of the Products, and true characteristics thereof, were material to the decisions of Plaintiffs and the other members of the California Subclass to purchase Products, as Defendant intended. Plaintiff and the other members of the California Subclass were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and reasonably relied on the Defendant's misrepresentations and omissions that the Products were waterproof in deciding to purchase the Products.

145. The fact that the Products are not, in fact, waterproof is a material fact that requires disclosure under the FAL.

146. Defendant did not, and still has not, disclosed to consumers that the Products are not, in fact, waterproof.

147. Plaintiffs and other members of the California Subclass reasonably relied on Defendant's concealment of misrepresentations, omissions, and concealment of material facts

regarding the nature, quality, value, and characteristics of the Products by purchasing them and believing they were waterproof (and similar claims).

148.    Had Plaintiffs and the other members of the California Subclass known the truth about the Products, they would not have purchased them or would have paid less for them.

149.    As alleged herein, Plaintiffs and other members of the California Subclass have suffered injury in fact and lost money or property at the time of purchase as a result of Defendant's conduct because they were exposed to and purchased the Products in reliance on the Defendant's false representations that the Products were waterproof when they are in fact not.

150.    Defendant's violations present a continuing risk to Plaintiffs and members of the California Subclass, as well as to the general public, because the Products do not perform as labeled and marketed, and use of the Products as labeled and marketed results in increased exposure to harmful UV rays. Defendant's unlawful acts and practices complained of herein affect the public interest. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they are not entitled. Plaintiffs and members of the California Subclass have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

151.    Plaintiffs plead this claim separately as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for

damages or enters judgment on them in favor of the Defendant, Plaintiffs' will have no adequate legal remedy. Plaintiffs makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in her other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the other members of the California Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action, and will lack an adequate remedy at law, if the Court requires her to show class-wide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiffs may not be able to establish each of the California Subclass member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent class members. The legal remedies available to Plaintiffs are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("'The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future.").  Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded when the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 177-80 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when

normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even when damages are unavailable). Furthermore, the standard and necessary elements for a violation of the UCL "unfair" prong and for quasi-contract/unjust enrichment are different from the standard that governs a legal claim.

152.    Plaintiffs and the other members of the California Subclass seek (a) a declaration that the above-described practices constitute false, misleading and deceptive advertising, (b) an order enjoining the Defendant's false labeling and advertising, (c) any such orders or judgments as may be necessary to restore to Plaintiffs and the other members of the California Subclass any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and (d) any other just and proper relief available under the false advertising provisions of the California FAL.

**COUNT 6**
**Violation of California Unfair Competition Law**
**Business & Professions Code §§17200, *et seq.***
**(On Behalf of Plaintiffs Bui and Le and the California Subclass)**

153.    Plaintiffs repeat and re- allege the allegations contained in the paragraphs above as if fully set forth herein.

154.    This cause of action is brought by Plaintiffs Bui and Le (for purposes of this Count, "Plaintiffs"), individually and on behalf of the California Subclass, pursuant to the California Unfair Competition Law, Business & Professions Code §17200, *et seq*.

155.    California's Unfair Competition Law ("UCL") prohibits "unfair [business] competition," including any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

156.    **Unlawful Business Practices:** In the course of conducting business, Defendant committed "unlawful" business practices in violation of the UCL by, *inter alia*, making the waterproof sunscreen representations, which are false, misleading, and deceptive; violating 21 C.F.R. § 201.327(g); selling Products that were misbranded under section 502 of the Federal Food Drug & Cosmetics Act; violating California Civil Code §§1572, 1573, 1709, and 1711; violating the California Legal Remedies Act, California Civil Code §1750, *et seq.*; violating California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*; and violating the consumer protection act of any state in which consumers of the Products reside, and the Commercial Code of any state in which consumers of the Products reside, and other laws alleged herein. Plaintiffs reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

157.    **Unfair Business Practices:** In the course of conducting business, Defendant committed "unfair" business acts or practices by, *inter alia*, making the "waterproof" and "sweatproof" claims (and similar claims), which are false, misleading, and deceptive. Defendant's conduct concerning the labeling, advertising, and sale of the Products was "unfair" because it was immoral, unethical, unscrupulous, or substantially injurious to consumers and the public at large and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims. There is no societal benefit from false advertising, only harm. While Plaintiffs and the public at large were and continue to be harmed, Defendant has been unjustly enriched by its false, misleading, and deceptive representations as they unfairly enticed Plaintiffs and Class members to purchase sunscreen products instead of similar sunscreen products sold by other manufacturers that were not advertised falsely as waterproof. Because the utility of Defendant's conduct (zero) is outweighed by the gravity of harm to Plaintiffs, consumers, and the competitive market,

Defendant's conduct is "unfair" having offended an established public policy embodied in, among other things, 21 C.F.R. § 201.327(g), where the U.S. Food and Drug Administration expressly found that the precise claims Defendant's made on and about their Products are *per se* false and misleading.

158.    **Fraudulent Business Practices:** A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test. In the course of conducting business, Defendant committed "fraudulent business act[s] or practices" and deceptive or misleading advertising by, *inter alia*, making the "waterproof" and "sweatproof" (and similar) representations, which are false, misleading, and deceptive to reasonable consumers, and which Defendant's knew were false, misleading, and deceptive to consumers because those precise representations have been unlawful (and *per se* false and misleading) under U.S. regulations for over a decade.

159.    Defendant's unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Products were "waterproof" and "sweatproof" (and similar claims). Those misrepresentations, concealments, omissions, and suppressions of material facts did, in fact, deceive reasonable consumers, including Plaintiffs and other members of the California Subclass, about the true nature, quality, value, and characteristics of the Products, as well as the quality and true value thereof.

160.    Defendant's misrepresentations, concealments, omissions, and suppressions of material facts were material to Plaintiffs' and the California Subclass members' decisions in that a reasonable consumer would have considered them important in deciding whether to purchase the Products or pay a lesser price. Plaintiffs and the other members of the California Subclass were

exposed to Defendant's misrepresentations, concealments, omissions, and suppressions of facts, and reasonably relied on Defendant's misrepresentations, concealment, omission and non-disclosure that the Products were, in fact, waterproof.

161.    Had Plaintiffs and the other members of the California Subclass known about the true nature of the Products they would not have purchased them or paid less for them.

162.    Defendant profited from selling the falsely, deceptively, and unlawfully advertised Products to unwary purchasers.

163.    Plaintiffs and the other members of the California Subclass suffered ascertainable loss as a direct and proximate result of Defendant's unlawful, fraudulent, and unfair business acts and practices.

164.    Defendant's violations present a continuing risk to Plaintiffs and members of the California Subclass, as well as to the general public, because Defendant continues to falsely market and sell the Products, the Products do not perform as labeled and marketed, and use of the Products as labeled and marketed results in increased exposure to harmful UV rays. Defendant's unlawful acts and practices complained of herein affect the public interest. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they are not entitled. Plaintiffs and members of the California Subclass have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

165.    Plaintiffs plead this claim separately as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Defendant, Plaintiffs' will have no adequate legal remedy. Plaintiffs makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in her other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the other members of the California Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action, and will lack an adequate remedy at law, if the Court requires her to show class-wide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiffs may not be able to establish each of the California Subclass member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent class members. The legal remedies available to Plaintiffs are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("'The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future."). Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded when the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 177-80 (2000) (restitution under the

UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even when damages are unavailable). Furthermore, the standard and necessary elements for a violation of the UCL "unfair" prong and for quasi-contract/unjust enrichment are different from the standard that governs a legal claim.

166.    Under Bus. & Prof. Code § 17203, Plaintiffs and the other members of the California Subclass seek (a) a declaration that the above-described practices constitute false, misleading and deceptive advertising, (b) an order enjoining Defendant's unfair and/or deceptive acts or practices, (c) any such orders or judgments as may be necessary to restore, to Plaintiffs and the other Class Members, any money acquired by unfair competition, including restitution of all monies from the sale of the Products and/or restitutionary disgorgement of all moneys which were unjustly acquired through acts of unlawful competition as provided in Cal. Bus. & Prof. Code § 17203, and (d) any other just and proper relief available under the California UCL.

### COUNT 7
### Violation of New York Deceptive Acts and Practices Act
### (N.Y. Gen. Bus. Law §349)
### (On Behalf of Plaintiff An and the New York Subclass)

167.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

168.    Plaintiff An (for purposes of this Count, "Plaintiff") brings this count, individually and on behalf of the other members of the New York Subclass, pursuant to N.Y. Gen. Bus. Law §349.

169. Plaintiff and members of the New York subclass are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).

170. Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

171. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §349(a).

172. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its sunscreen Products, including that: (a) Defendant knowingly and intentionally misrepresented that the Products were "waterproof," when they were, in fact, not; and (b) Defendant knowingly and intentionally omitted, concealed and/or failed to disclose that the Products were not "waterproof" and would instead wash off in the water.

173. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its sunscreen Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

174. Defendant's misrepresentations and omissions regarding the sunscreen Products were disseminated to Plaintiff and the members of the New York Subclass in a uniform manner.

175. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiff and the members of the New York Subclass, about whether the Products were, in fact, "waterproof."

176.    The facts regarding sunscreen Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the members of the New York Subclass, who consider such facts to be important to their purchase decisions with respect to sunscreen Products.

177.    Defendant charged a price premium for the Products.

178.    Plaintiff and the members of the New York Subclass were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

179.    Specifically, Plaintiff and the members of the New York Subclass were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding the sunscreen Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the members of the New York Subclass would not have purchased the Products, or would have paid less for them. Thus, Plaintiff and members of the New York Subclass have sustained economic injury and loss—either by purchasing a sunscreen Product they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendant's actions and omissions alleged above.

180.    Defendant's unlawful acts and practices complained of herein affect the public interest.

181.    As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiff and the members of the New York Subclass seek an order awarding actual damages, statutory damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

## COUNT 8
### Violation of the New York False Advertising Act
### (N.Y. Gen. Bus. Law §350)
### (On Behalf of Plaintiff An and the New York Subclass)

182.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

183.    Plaintiff An (for purposes of this Count, "Plaintiff") brings this count, individually and on behalf of the other members of the New York Subclass, pursuant to N.Y. Gen. Bus. Law §350.

184.    Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

185.    The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

186.    The Products are consumer-oriented sunscreen products.

187.    Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been

known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the members of the New York Subclass.

188.    In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its sunscreen Products, including that: (a) Defendant knowingly and intentionally misrepresented that the Products were "waterproof," when they were, in fact, not; and (b) Defendant knowingly and intentionally omitted, concealed and/or failed to disclose that the Products were not "waterproof" and would instead wash off in the water.

189.    Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the sunscreen Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

190.    Defendant's misrepresentations and omissions regarding the "waterproof" nature of the sunscreen Products were disseminated to Plaintiff and the members of the New York Subclass in a uniform manner.

191.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the members of the New York Subclass, about the sunscreen Products.

192.    The facts regarding the sunscreen Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to the sunscreen Products.

193.    Defendant charged a price premium for the Products.

194.    Plaintiff and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above. Specifically, Plaintiff and the members of the New York Subclass were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding the sunscreen Products. Had Defendant not engaged in the conduct alleged herein, Plaintiff and the members of the New York Subclass would not have purchased the Products, or would have paid less for them. Thus, Plaintiff and members of the New York Subclass have sustained economic injury and loss—either by purchasing a sunscreen Product they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendant's actions and omissions alleged above..

195.    Defendant's unlawful acts and practices complained of herein affect the public interest.

196.    As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiff and the Class members seek an order awarding actual damages, statutory damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

### COUNT 9
### Violation Of The Illinois Uniform Deceptive Trade Practices Act
### 815 Ill. Comp. Stat. 510/1 *et seq.*
### (On Behalf of Plaintiff Younvanich and the Illinois Subclass)

197.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

198.    Plaintiff Younvanich (for purposes of this Count, "Plaintiff") brings this count, individually and on behalf of the other members of the Illinois Subclass, pursuant to the Illinois Uniform Deceptive Trade Practices Act ("Illinois UDTPA").

199.    The Illinois UDTPA prohibits unfair or deceptive trade practices in the course of a business, vocation, or occupation. 815 ILCS 510/2(a).

200.    In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the Products, as detailed above.

201.    By mispresenting the Products as "waterproof" (and similar claims), Defendant engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 510/2(a): representing that the Products had a characteristic that they did not actually have; representing that the Products were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard; advertising the Products with the intent not to sell them as advertised; and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding. 815 ILCS 510/2(a)(5), (7), (9), and (12).

202.    Defendant's unfair or deceptive acts or practices, including their misrepresentations of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Products were waterproof (and similar claims). Indeed, those misrepresentations of material facts did in fact deceive reasonable consumers, including

Plaintiff and members of the Illinois subclass, about the Products, the quality of the Products, and the true value of the Products.

203. Defendant intended for Plaintiff and Class Members to rely on their misrepresentations—which they did by purchasing the Products at the prices they paid believing that their Products would be waterproof.

204. Defendant's misrepresentations of material facts regarding the Products and true characteristics of the Products were material to the decisions of Plaintiff and Class Members to purchase the Products, as Defendant intended.

205. Had they known the truth about the Products not being waterproof (and similar claims), Plaintiff and members of the Illinois Subclass would not have purchased the Products, or would have paid significantly less for them.

206. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and members of the Illinois Subclass have sustained economic injury and loss—either by purchasing a sunscreen Product they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendant's actions and omissions, as alleged above— that first occurred at the time each sunscreen Product was purchased.

207. Defendant's violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Products are not waterproof as advertised. Defendant's unlawful acts and practices complained of herein affect the public interest.

208. Pursuant to 815 ILCS 510/3, Plaintiff and Class Members seek an order enjoining Defendant's unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by their unfair or deceptive acts or practices,

including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Illinois UDTPA.

209.    Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of Defendant, Plaintiffs will have no adequate legal remedy.

**COUNT 10**
**Violation Of The Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 Ill. Comp. Stat. 505/1 *et seq.***
**(On Behalf of Plaintiff Younvanich and the Illinois Subclass)**

210.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

211.    Plaintiff Younvanich (for purposes of this Count, "Plaintiff") brings this count, individually and on behalf of the other members of the Illinois Subclass, pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA")

212.    Defendant, Plaintiff, and members of the Illinois Subclass are "persons" within the meaning of 815 ILCS 505/1(c).

213.    Plaintiff and members of the Illinois Subclass are "consumers" within the meaning of 815 ILCS 505/1(e).

214.    The Products are "merchandise" within the meaning of 815 ILCS 505/1(b).

215.    Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

216.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false

promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce." 815 Ill. Comp. Stat. Ann. 505/2.

217.    Defendant's violations of the Illinois CFA occurred repeatedly in their trade or practice—including the marketing and sale of the Products.

218.    Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the Products, including that: (a) Defendant knowingly and intentionally misrepresented that the Products were "waterproof" when they were, in fact, not; and (b) Defendant knowingly and intentionally omitted, concealed and/or failed to disclose that the Products were not "waterproof" and would instead wash off in the water.

219.    Defendant's misrepresentations and omissions were disseminated to Plaintiff and members of the Illinois Subclass in a uniform manner.

220.    Defendant had an ongoing duty to Plaintiff and members of the Illinois Subclass to refrain from unfair or deceptive practices under the Illinois CFA in the course of their business. Specifically, Defendant owed Plaintiff and members of the Illinois Subclass a duty to not disseminate false or deceptive or misleading advertising.

221.    By misrepresenting the Products as waterproof, Defendant engaged unfair or deceptive business practices prohibited by the 815 ILCS 505/2, including the use or employment of deception and fraud, and/or the misrepresentation and omission of material facts, and engaging in conduct which creates a likelihood of confusion or misunderstanding.

222.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and members of the Illinois Subclass, about the Products, the quality of the Products, and the true value of the Products.

223.    The facts regarding the Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and members of the Illinois Subclass, who consider such facts to be important to their purchase decisions with respect to the Products.

224.    Plaintiff and members of the Illinois Subclass were aggrieved by Defendant's violations of the Illinois CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.  Specifically, had they known the truth about the Products, Plaintiff and members of the Illinois Subclass would not have purchased the Products, or would have paid less for them. Thus, Plaintiff and members of the Illinois Subclass have sustained economic injury and loss—either by purchasing a sunscreen Product they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendant's actions and omissions alleged above.

225.    Defendant's violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Products are not waterproof. Defendant's unlawful acts and practices complained of herein affect the public interest.

226.    Pursuant to 815 ILCS 505/10a, Plaintiff and Class Members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Illinois CFA.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment:

 A. Determine that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4), direct that reasonable notice of this action be given to the Classes, appoint Plaintiffs as named representatives of the Classes, and appoint Plaintiffs' counsel as Class Counsel;

 B. Require Defendant to pay for sending notice to the certified Classes;

 C. Declaring that Defendant's marketing and labeling of the Products was false and misleading;

 D. Enjoining Defendant's unlawful conduct;

 E. Award damages (including actual, nominal, presumed, statutory, and punitive damages as provided by law) and restitution to the Classes in an amount to be determined at trial, plus pre- and post-judgment interest, in accordance with law;

 F. Order disgorgement of Defendant's ill-gotten revenues;

 G. Awarding attorneys' fees and costs, as allowed by law;

 H. Enter judgment against Defendant and in favor of Plaintiffs and the Classes; and

 I. Providing such further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated:  February 28, 2024

**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**

*_/s/ Kimberly M. Donaldson-Smith_____*
Kimberly M. Donaldson-Smith
361 West Lancaster Avenue
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649
kds@chimicles.com

Robert J. Kriner, Jr.
Scott M. Tucker
2711 Centerville Rd.
Suite 201
Wilmington, DE 19808
Phone: 302-656-2500
Fax: 302-656-9053
Scotttucker@chimicles.com

Eric S. Dwoskin
DWOSKIN WASDIN LLP
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Tel.: (561) 849-8060
edwoskin@dwowas.com

*Attorneys for Plaintiffs and the putative Class*