**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KATHERINE BUI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ABLE C&C US, INC. and ABLE C&C CO. LTD.,<br><br>Defendants. | Civil Action No.: 24-1157<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is the motion to dismiss (ECF No. 67) filed by defendants Able C&C US, Inc. and Able C&C Co. Ltd. ("Defendants") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs Katherine Bui, Rita Le, Youngshin An, Shanida Younvanich, and Hilary Brown, individually and on behalf of all others similarly situated, ("Plaintiffs") filed an opposition (ECF No. 68), and Defendants replied (ECF No. 69). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion to dismiss is granted, and Plaintiffs' Second Amended Class Action Complaint (ECF No. 62, "SAC") is dismissed for lack of standing without prejudice.

## I. BACKGROUND[1]

Plaintiffs bring this putative consumer class action against Defendants for alleged deceptive labeling and advertising of four sunscreen products (the "Products"). Defendants

[1] The following facts are accepted as true for the purposes of the motion to dismiss.

represent that the Products are "waterproof," "sweatproof," and "block" all "UV rays 'despite contact with water and sweat.'" SAC ¶¶ 9–13. Plaintiffs, however, allege that these representations are false because "all sunscreens eventually wash off in the water, and thus there is no such thing as 'waterproof' sunscreen." *Id.* ¶ 4. Similarly, they contend "no sunscreen blocks the sun's UV rays entirely." *Id.* ¶ 6. Plaintiffs cite to the U.S. Food and Drug Administration website, which states "Fact: There's no such thing as waterproof sunscreen," and 21 C.F.R. § 201.327(g), which categorizes "Sunblock," "sweatproof," and "waterproof" as false and/or misleading terms on sunscreen products. *Id.* ¶¶ 5–8.

Each Plaintiff alleges that they purchased one or more of the Products based on Defendants' allegedly false and deceptive claims. *Id.* ¶¶ 106–10. They assert that they believed the Products were waterproof and/or would completely block harmful UV rays and that they would have paid less or not purchased the Products had they known that the Products washed off in the water and/or did not block the sun's rays. *Id.* Each Plaintiff also asserts that they wore the Product in the water and were, "on information and belief, exposed to more harmful UV rays than [they] would have been had the products in fact been 'waterproof'" or "blocked the sun's harmful UV rays." *Id.* However, Plaintiffs do not seek damages for any physical injury. *Id.* ¶ 121. Plaintiff Bui paid $14.00 for her Product, Plaintiff Le purchased three Products and paid $18.56, $17.40, and $13.44, Plaintiff An paid $12.58, Plaintiff Younvanich paid $12.90, and Plaintiff Brown purchased the same Product twice for $19.00 and then again for $11.58. *Id.* ¶¶ 106–10.

Plaintiffs bring this action alleging Breach of Express Warranty (Count I), Unjust Enrichment (Count II), violations of the California Consumers Legal Remedies Act (Count III), violations of California false advertising law (Count IV), violations of California Unfair Competition Law (Count V), violations of New York Deceptive Acts and Practices Act (Count

VI), violations of the New York False Advertising Act (Count VII), violations of the Illinois Uniform Deceptive Trade Practices Act (Count VIII), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IX), and violations of consumer protection statutes in fourteen states (Count X). Defendants filed the instant motion to dismiss under Rules 12(b)(1) and 12(b)(6). Given that the Court dismisses the SAC for lack of standing under Rule 12(b)(1), it does not reach Defendants' 12(b)(6) motion for failure to state a claim.

## II. LEGAL STANDARD

A court must grant a motion to dismiss under Rule 12(b)(1) if it determines that it lacks subject matter jurisdiction over a claim. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The Connelly Firm, P.C. v. U.S. Dep't of Treasury*, No. 15-2695, 2016 WL 1559299, at *2 (D.N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)). Further, when dealing with a facial 12(b)(1) challenge, like the one presented in this case, the Court looks only at the allegations in the pleadings and does so in the light most favorable to the non-moving party. *U.S. ex rel. Atkinson v. PA Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

## III. DISCUSSION

Defendants argue that Plaintiffs lack standing and therefore the Court lacks subject matter jurisdiction. The Court agrees. Article III limits a court's jurisdiction to actual cases or controversies. U.S. Const. art. III, § 2. "One element of this bedrock requirement is that plaintiffs must establish that they have standing to sue." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (quotations omitted). To have standing, the plaintiff (1) must have suffered an "injury in

fact," or an "invasion of a legally protected interest" that is "concrete and particularized;" (2) there must be a "causal connection between the injury and the conduct complained of;" and (3) there is a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation and internal quotation marks omitted). At the pleading stage, "[a]lthough general factual allegations of injury [in fact] resulting from the defendant's conduct may suffice, the complaint must still clearly and specifically set forth facts sufficient to satisfy Article III." *Reilly*, 664 F.3d at 41 (quotations omitted).

Plaintiffs allege two theories of injury-in-fact based on economic harm: that they did not receive the benefit of the bargain and paying a price premium. SAC ¶¶ 96–97. To prevail on a benefit of the bargain theory, a plaintiff "must allege facts that would permit a factfinder to determine that the economic benefit she received in purchasing the [product] was worth less than the economic benefit for which she bargained." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.* ("*J&J*"), 903 F.3d 278, 285 (3d Cir. 2018). Alleging "an economic injury as a result of a purchasing decision" requires a plaintiff to "do more than simply characterize that purchasing decision as an economic injury. The plaintiff must instead allege facts that would permit a factfinder to determine, without relying on mere conjecture, that . . . plaintiff failed to receive the economic benefit of the bargain." *J&J*, 903 F.3d at 281. Similarly, to sufficiently allege a price premium theory, a plaintiff must assert that the "defendant's misrepresentations or omissions caused that plaintiff to overpay for a product." *Estrada v. Johnson & Johnson*, No. 16-7492, 2017 WL 2999026, at *15 (D.N.J. July 14, 2017). Neither theory of economic harm may rely on an "inferential leap." *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 2875, 2021 WL 100204, at *7 (D.N.J. Jan. 12, 2021).

Here, Plaintiffs allege that they purchased the Products because Defendants advertised and labeled them as waterproof and sun blocking. Those claims, however, were allegedly "false, deceptive, misleading and unfair because the Products [were] not waterproof and [did] not block all UV ray exposure." SAC ¶ 92. Had Plaintiffs known the sunscreens were not waterproof or completely UV blocking, they claim they "would have paid less for the Product[s], or not purchased [them] at all." *Id.* ¶¶ 106–10. For this reason, Plaintiffs assert that they "did not receive the benefit of the bargain and/or paid more for the products than [they] would have paid but for Defendants' misrepresentations." *Id.*

The Court begins with Plaintiffs' benefit of the bargain theory of economic harm in which Plaintiffs present three sets of allegations: (1) the Products were worthless because they "were illegal to import into and sell in the United States" due to their allegedly false advertising and labeling, SAC ¶ 99; (2) that the Products are worthless as waterproof and UV blocking sunscreens because they were not waterproof and did not block all harmful UV rays, *id.*; and (3) in the alternative, the Products are not worthless but rather have less worth than what Defendants sold them for. *Id.* ¶ 101. As discussed below, these allegations, as pled, do not permit an eventual factfinder to determine the difference between the economic benefit received and the benefit bargained for.

Plaintiffs' allegation that the Products were worthless because they were illegally labelled and sold is insufficient. Plaintiffs contend that "Courts have recognized that purchasing a health and safety product that was unlawfully sold in violation of U.S. law constitutes an injury-in-fact, even if . . . the product has some residual value." ECF No. 68 at 14. They rely on *Debernardis v. IQ Formulations, LLC*, an Eleventh Circuit case that the Third Circuit cited approvingly in *Huertas v. Bayer US LLC*. *Id.* at 14–15; *Huertas*, 120 F.4th 1169, 1177 (3d Cir. 2024) (citing *Debernardis*,

942 F.3d 1076, 1085 (11th Cir. 2019)). The court in *Debernardis* found that the plaintiffs had sufficiently alleged an injury-in-fact under a benefit of the bargain theory because the supplements they purchased were allegedly adulterated and therefore had no value. *Debernardis*, 942 F.3d at 1085. The court noted "that some defects so fundamentally affect the intended use of a product as to render it valueless." *Id.* The court in *Huertas*, reached the same conclusion when plaintiffs alleged a benefit of the bargain theory for two contaminated topical products "because they contained a carcinogenic component that is not an ingredient of the products." 120 F.4th at 1176. As currently alleged, the same cannot be said of the Products at issue. There are no allegations, like in *Huertas* or *Debernardis*, that the products were contaminated. Rather, the Products allegedly did not conform to their waterproof and sun blocking labeling but still functioned as a sunscreen. As currently pled, this allegation is insufficient to establish a defect that "so fundamentally affect[s] the intended use of a product as to render it valueless." *Debernardis*, 942 F.3d at 1085. Plaintiffs have therefore not alleged "facts that would permit a factfinder to determine . . . the economic benefit [they] received." *J&J*, 903 F.3d at 285.

Plaintiffs remaining benefit of the bargain allegations—that the Products were "worthless" as waterproof or total UV blocking sunscreens or "in the alternative, the Products are worth less than the amounts Defendants charged"—are also lacking because neither theory is supported by sufficient factual allegations. SAC ¶¶ 99, 101. Plaintiffs appear to contend that the Products were worthless while also alleging facts that the Products have value. As to the retention of value, Plaintiffs allege that they were "exposed to more harmful UV rays than [they] would have been had the [P]roducts in fact been waterproof." *Id.* ¶¶ 106–10. With that allegation, Plaintiffs seemingly maintain that the Products worked as a sunscreen by providing UV protection, but

eventually "wash[ed] off in the water." *Id.* Accordingly, Plaintiffs have not plausibly alleged, at this stage, that the Products were worthless.

As for their alternative theory that the Products had less worth than what Defendants charged, Plaintiffs allege that "reasonable consumers will pay more for a product that provides greater performance and safety than a product that provides less." *Id.*¶ 101. Plaintiffs intend to support this theory with "expert testimony quantifying that amount for each Product during discovery." *Id.* While Plaintiffs may ultimately show the Products indeed had a lesser worth than what Defendants charged, as pled, Plaintiffs' "threadbare 'but-for' assertions" are not enough to state an injury in fact. *See, e.g.*, *In re Plum Baby Food Litig*., 637 F. Supp. 3d 210, 226 (D.N.J. 2022).

In any event, regardless of the theory pursued and the tension between the theories presented, Plaintiffs do not provide the eventual factfinder with a factual basis to determine the Products' values, and consequently, the loss of the benefit of the bargain. Of course, Plaintiffs are not "required to allege the *exact* value of [their] economic injury at the pleading stage" but the allegations regarding the Products' value are insufficient. *J&J*, 903 F.3d at 287. Plaintiffs' commitment to provide some future evidence of the difference in value is similarly lacking. *See id.* ("Promise to provide [the Court] with a means to conceptualize [Plaintiff's] injury at some future time does nothing to assist us in determining whether [Plaintiff] has standing at this stage."); *Finkelman v. Nat'l Football League*, 810 F.3d 187, 202 (3d Cir. 2016) ("Nor are we persuaded by plaintiffs' counsel's promises of future expert testimony when no facts supporting plaintiffs' theory of injury appear within the four corners of the complaint.").

Finally, in their opposition brief, Plaintiffs contend that they have alleged specific misrepresentations made by Defendants and that they affirmatively relied on those

misrepresentations. ECF No. 68 at 6–7. As such, Plaintiffs argue they have standing. Notwithstanding this contention, as discussed above, the Court is not satisfied that Plaintiffs have alleged they bargained for "a product worth a given value but received a product worth less." *J&J*, 903 F.3d at 283. Put another way, as pled, the SAC asks the Court to make the inferential leap that the Products are indeed worth less than advertised. Accordingly, Plaintiffs have not adequately pled an injury-in-fact under a benefit of the bargain theory.

Plaintiffs second theory of economic harm—that they paid a price premium—is also inadequately pled to show an injury-in-fact. "In price premium cases, a plaintiff alleges that the defendant's misrepresentations or omissions caused that plaintiff to overpay for a product." *Estrada*, 2017 WL 2999026, at *15. Here, Plaintiffs allege "[u]pon information and belief, Defendants' false labeling and marketing . . . allowed it to charge a price premium for the Products." SAC ¶ 96. The theory is as follows: the Products were allegedly illegally labeled as "waterproof" and sun blocking; competing products could not be labeled similarly because it is illegal; this allowed Defendants "to label and advertise the Products as superior to other sunscreens on the market"; and consumers will pay more for such superior sunscreens. *Id.* 94–95. The examples in the SAC showing the Products' packaging and websites, however, do not appear to show that Defendants marketed or labeled the Products as superior. *See* SAC ¶¶ 11, 13, 50, 52, 53, 55, 61, 64, 67, 71, 75, 76; *Estrada*, 2017 WL 2999026, at *15 ("Plaintiff has not alleged that she would not have paid a premium . . . but for Defendants' advertisements of that product as superior to competing products."). Moreover—for one way in which a plaintiff can potentially state a price premium theory—the SAC does not "set forth any comparable, cheaper products to demonstrate that [the Products were] in fact sold at a premium price." *Estrada*, 2017 WL 2999026, at *15; *see also Beyer v. Kenvue Brands LLC*, No. 25-12180, 2026 WL 1396498, at *4 (D.N.J.

May 19, 2026) ("Although Plaintiffs claim that consumers are willing to pay more for hypoallergenic products, Plaintiffs fail to identify any comparable, cheaper products to demonstrate that a premium price was in fact paid."); *Novick v. Unilever United States, Inc.*, No. 25-4804, 2026 WL 1879145, at *9 (D.N.J. June 30, 2026) (finding standing under price premium theory in part because "Plaintiffs identif[ied] two cheaper comparators"). Plaintiffs do not allege which alternative products they refrained from purchasing in favor of the Products, or the cost of those foregone products. The SAC also fails to allege any details regarding the price premium that waterproof sunscreen apparently commands over non-waterproof or partially waterproof sunscreen. The Court cannot make the inferential leap from misrepresentation to economic injury based on mere speculation. *See J&J*, 903 F.3d at 281. Accordingly, under the circumstances of this case, Plaintiffs have not adequately pled an injury-in-fact and lack standing to bring their claims. The motion to dismiss is granted.

## IV. CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 29th day of September, 2026;

**ORDERED** that Defendants' motion to dismiss (ECF No. 67) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Second Amended Class Action Complaint (ECF No. 62) is **DISMISSED** without prejudice; and it is further

**ORDERED** that Plaintiffs shall have thirty (30) days from entry of this Opinion and Order to submit an amended complaint that addresses the deficiencies identified in this Opinion and Order. Insofar as Plaintiffs submit a further amended complaint, they shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by

bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(b)(2); and it is further

**ORDERED** that the Clerk of the Court is directed to mark this case as **CLOSED**.

**SO ORDERED**.

*s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**